511 DETROIT STREET, INC., and
Executive Art Studios, Inc.,
Plaintiffs-Appellees,

v.

Frank J. KELLEY, in his official capacity as Attorney General, State of Michigan, (85–1279) Defendant-Appellant.

DEQUINDRE BOOKS AND NEWS, INC., and F.P. Books and News, Inc., Plaintiffs-Appellees.

v.

Hon. Frank J. KELLEY, in his official capacity as Attorney General, State of Michigan, (85–1642) and L. Brooks Patterson, in his official capacity as Prosecuting Attorney of the County of Oakland, State of Michigan, (85–1622) Defendants-Appellants.

Nos. 85–1279, 85–1622 and 85–1642.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1986.

Decided Dec. 17, 1986.

Rehearing and Rehearing En Banc
Denied Feb. 13, 1987.

Stephen M. Taylor (argued), Southfield, Mich., for plaintiffs-appellees.

George H. Weller (argued), Asst. Atty. Gen., Louis J. Caruso, Sol. Gen., Lansing, Mich., Allen M. Wolf, Asst. Pros. Atty., Richard H. Browne (argued), Pontiac, Mich., for defendants-appellants.

Before KRUPANSKY and BOGGS, Circuit Judges, and PORTER, Senior District Judge.*

BOGGS, Circuit Judge.

Defendants-appellants appeal from an order of District Judge Stewart A. Newblatt of the Eastern District of Michigan ruling that a portion of Michigan's anti-obscenity law is unconstitutionally vague and overbroad and that it acts as an impermissible restraint on protected speech. For the reasons set forth below, we reverse and remand.

## I.

The 1984 Michigan anti-obscenity law, Act 343 of 1984, was to become effective on March 29, 1985. The law includes a provision, Section 6, which provides that—

> [a] person is guilty of obscenity in the second degree when, knowing the content and character of the material, the person disseminates, or possesses with intent to disseminate, to the public any obscene material.

Obscenity in the second degree is a misdemeanor, punishable by up to one year in prison and/or up to a $5000 fine. Plaintiffs-appellees ("plaintiffs") have not contested this section.

The law also includes a provision, Section 5, which is the subject of this lawsuit. That section provides that—

> [a] person is guilty of obscenity in the first degree when, knowing the content and character of the material, the person disseminates, or possesses with intent to disseminate, any obscene material if dissemination of obscene material is a predominant and regular part of the person's business at a particular theatre, store, warehouse, or other establishment and if obscene materials are a principal part or substantial part of the stock in trade at that theatre, store, warehouse, or other establishment.

---

* The Honorable David S. Porter, United States Senior District Judge for the Southern District of Ohio, sitting by designation.

A first offense of obscenity in the first degree is punishable by up to one year in prison and/or up to a $100,000 fine; a second or subsequent offense is punishable by up to one year in prison and a mandatory fine of $50,000 to $5,000,000.[1]

Shortly before the law was to become effective, the owners of three establishments in Genesee County, Michigan, filed suit in federal district court seeking a final order declaring Section 5 unconstitutional on its face and enjoining defendants from enforcing it against them. The district court consolidated the trial of the action on the merits with the hearing of plaintiffs' motion for a preliminary injunction; declared Section 5 to be overbroad, vague, and a prior restraint; and enjoined the Michigan Attorney General and the Genesee County prosecutor from enforcing it.

Meanwhile, the owners of several establishments in Oakland County, Michigan, had filed a similar suit seeking similar relief with respect to Section 5. *Dequindre Books v. Kelley*, No. 85–71115 (E.D.Mich). District Judge Newblatt adopted his opinion in *511 Detroit Street* as his opinion in that case as well. Defendants appeal to this Court from the decisions in both cases, which have been consolidated for purposes of this appeal.[2]

## II.

Plaintiffs argued, and the district court agreed, that Section 5 is unconstitutionally vague. The void-for-vagueness doctrine requires that a penal statute define a criminal offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement," *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), and "[w]here a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974).

We look first at whether this is a situation that reaches expression sheltered by the first amendment to the extent that this Court is required, under *Smith v. Goguen*, to demand of the statute a greater degree of specificity than we would demand in other contexts. We note that plaintiffs have not attacked, on void-for-vagueness grounds, the definition of obscenity but, rather, have attacked the terms "predominant," "regular," "business," "principal," "substantial," and "stock in trade," as used in Section 5. Put another way, plaintiffs do not appear to have a problem determining when their conduct is criminal, but they complain that they cannot determine with sufficient precision just how criminal it is. Any vagueness in the challenged language affects only the level of crime with which an actor might be charged, but does not affect the type of expression proscribed by the act. Therefore, in light of the narrowness of this challenge, we do not require of the language the greater degree of specificity demanded in a first amendment context. *Cf. Smith v. Goguen, supra.*

Looking now to the general requirements under the void-for-vagueness doctrine, we must determine whether Section 5 defines the criminal conduct with sufficient definiteness that ordinary people can understand what conduct is prohibited. *See Kolender v. Lawson, supra.* Plaintiffs' specific complaint about Section 5 appears to revolve around the use of the words "predominant," "regular," "business," "principal," "substantial," and "stock in trade."

---

**1.** A conviction under Section 5 will be considered a subsequent offense if the defendant has been convicted under Section 5 or under any similar statute of the United States or of any state.

**2.** Defendants argue that the District Court should have abstained from decision until Section 5 was authoritatively interpreted by the Michigan courts. Had the District Court been correct in its substantive ruling, abstention would have been inappropriate.

The essence of this complaint seems to be that they do not know the *basis* upon which "predominant," "regular," "principal," "substantial," or "stock in trade" will be determined; they inquire rhetorically whether they will be determined on the basis of the establishment's dollar volume, shelf or floor space, or the number of articles sold, and will they be determined on the basis of the past year, month, day, hour, or ten minutes?

■ Under *Kolender*, we must decide this issue by reference to how ordinary people are likely to understand the terms. Plaintiffs illustrate their concern by arguing that state officials could enter a newsstand, purchase all non-obscene materials, no matter how voluminous, then arrest and convict the owners for a violation of Section 5, based solely on the remaining material. One is immediately struck that this is an absurd result, but that leads us to reject the example, not the statute. We do not believe that this example is within the scope of Section 5 as ordinary people would understand it: We cannot imagine that a jury of ordinary people would find, under those circumstances, that "dissemination of obscene material is a predominant and regular part of [that] person's business ... and ... a principal part or substantial part of the stock in trade at that ... establishment." A case that would be less clear would be where the state could show that most of the dollar-volume of an establishment was the result of disseminating obscene materials and where the establishment could show that dissemination of obscene materials used only a small proportion of the floor space at the establishment and that the majority of sales transactions involved only non-obscene materials. However, the fact that there are cases near the margin where it is difficult to draw the line does not make a statute unconstitutional, *National Mobilization Committee to End War in Viet Nam v. Foran*, 411 F.2d 934, 939 (7th Cir.1969), particularly where the margin in question is not that between criminal and non-criminal conduct but is, as here, that between degrees of criminal conduct. Furthermore, the challenged terms are found throughout civil and criminal codes, and throughout reported cases. *See, e.g.,* 18 U.S.C. §§ 245 ("substantial"), 1954 ("regular"); 26 U.S.C. §§ 48, 831(b) ("predominant"), 1221 ("stock in trade"); *Acro Mfg. Co. v. C.I.R.*, 334 F.2d 40, 43 (6th Cir.1964) ("stock in trade").

Under the void-for-vagueness doctrine, a criminal statute must also describe the proscribed conduct in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson, supra* (there the Court invalidated a state statute making it a crime to fail to produce "credible and reliable" identification when requested by a police officer). Again we note that plaintiffs do not challenge, on void-for-vagueness grounds, the language defining "obscenity," language also contained in Section 6. Therefore, any act against which state authorities might enforce Section 5 (because they believe that the person has committed obscenity in the first degree) would necessarily also be a violation of Section 6 (obscenity in the second degree). Thus, the void-for-vagueness challenge here must be that the language distinguishing between Sections 5 and 6 is so vague as to encourage enforcement officials to charge a Section 5 violation as well as a Section 6 violation for arbitrary, non-statutory reasons.

First, as we discussed above, the terms of the statute are found throughout the law and are within the understanding of ordinary people. Furthermore, the nature of the distinction between Sections 5 and 6 minimizes the likelihood of arbitrary or discriminatory enforcement. The distinction between the punishments under the two sections is that one convicted under Section 5 may be required to pay much higher fines than one convicted under Section 6; however, we note that each section provides for up to one year in prison, which minimizes the difference between the detrimental effects of the two sections and likewise minimizes the potential for arbitrary and discriminatory enforcement. This is clearly not a situation, such as that in *Kolender*, where a statute is likely to be enforced at

the "whim" of the enforcement official. Here, an enforcement official seeking to enforce Section 5 must prove all the elements of Section 6, a crime providing for up to one year in prison, in addition to proving the additional elements of Section 5. We hold that this does not encourage arbitrary or discriminatory enforcement of Section 5.

## III.

Plaintiffs also contended, and the district court agreed, that Section 5 was unconstitutionally overbroad, primarily because of the nature of the scienter requirement. The district court additionally concluded that Section 5 was overbroad because the bookseller might be punished for disseminating protected material, presumably because a judge may consider a business's total profits when determining what level of fine to impose. Jt.App. at 32.

■ First, we reject the notion that a bookseller may be punished for sales of protected, non-obscene material because a sentencing judge may consider the business's total profits. "Sentencing judges may, and often do, consider the defendant's ability to pay...." *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 22, 93 S.Ct. 1278, 1290, 36 L.Ed.2d 16 (1973); *see also Bearden v. Georgia*, 461 U.S. 660, 670, 103 S.Ct. 2064, 2071, 76 L.Ed.2d 221 (1983) ("the sentencing court can consider the entire background of the defendant, including his employment history and financial resources").

Next, we examine whether the scienter requirement applicable to Section 5 is constitutionally adequate. The Supreme Court held in *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), that a statute making it a criminal offense to possess obscene material must contain *some* scienter requirement (the statute there imposed *strict liability*, without regard for knowledge, upon one possessing obscene material). The Court there was concerned that the statute would tend to restrict the public's access to books because of "[t]he limitation in the amount of reading materi-

al with which [a bookseller] could familiarize himself, and his timidity in the face of his absolute criminal liability." *Id.* 361 U.S. at 153–54, 80 S.Ct. at 219. However, the Court also expressly reserved judgment on what sort of mental element would be required. *Id.* at 154, 80 S.Ct. 219.

In a later case, the Supreme Court upheld a New York State obscenity statute that, by its terms, required no knowledge of the material and which included a presumption that possession by any person of six or more identical or similar obscene articles had violated the law. *Mishkin v. New York*, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). However, the court relied, in its holding, on the statutory construction of the law by state courts, which construed the law to apply only to "those who are in some manner aware of the *character* of the material they attempt to distribute." *Id.* at 510, 86 S.Ct. at 964 (emphasis supplied by Court in *Mishkin*). Beyond the Supreme Court's holding that the particular, judicially-created scienter requirement was constitutional, the Court again declined to define "what sort of mental element is requisite to a constitutionally permissible prosecution." *Id.* at 511, 86 S.Ct. at 964–65 (quoting *Smith*, 361 U.S. at 154, 80 S.Ct. at 219).

■ Here Section 5, by its terms, applies only to one who knows "the content and character of the material." That knowledge is defined in Section 2 of the law as—

having general knowledge or reason to know, or a belief or ground for belief which warrants further inspection or inquiry, of the nature and character of the material involved. A person has such knowledge when he or she knows or is aware that the material contains, depicts, or describes sexual conduct whether or not such person has precise knowledge of the specific contents of the material.

The first sentence of Section 2 is very close to the limiting language, as construed in the state courts, that the Supreme Court held in *Mishkin* was constitutionally per-

missible, where the statute, as construed, applied only to—

> those who are in some manner aware of the *character* of the material

*Mishkin,* 383 U.S. at 510, 86 S.Ct. at 964 (emphasis supplied by Court in *Mishkin*). Thus, we find no constitutional infirmity in the first sentence of Section 2.

We are troubled, however, by the second sentence of Section 2. That sentence provides that one has the knowledge described in the first sentence of Section 2—

> when he or she knows or is aware that the material contains, depicts, or describes sexual conduct whether or not such person has precise knowledge of the specific contents of the material.

This language appears to set up a presumption that one who knows or is aware that material depicts or describes sexual conduct is also aware of the nature and character of the entire item. The effect of such a presumption would be to require a bookseller personally to inspect, in its entirety, any material that he or she has reason to believe depicts or describes sexual conduct (which may be protected material), to determine whether or not it is obscene. Such an inquiry strongly resembles that from which the Supreme Court, in *Smith,* sought to protect booksellers.[3]

Federal courts, however, are reluctant to declare a state statute to be facially unconstitutional, without the benefit of a state court's construction of the statute, where the statute is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *Harman v. Forssenius,* 380 U.S. 528, 535, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965); *see also Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed.2d 971 (1941). The *Mishkin* case, cited above, contains an example of a state statute that benefited from a state-court interpretation. The statute

there, like that in *Smith,* had no express scienter requirement; however, the New York Court of Appeals read the statute to apply only to one who is in some manner aware of the character of the material. *People v. Finkelstein,* 9 N.Y.2d 342, 344–45, 214 N.Y.S.2d 363, 364–65, 174 N.E.2d 470, 471 (1961). The U.S. Supreme Court relied on that interpretation in finding the statute constitutional. 383 U.S. at 510, 86 S.Ct. at 964. In light of this example, we cannot say with certainty that the sentence here in question is not fairly subject to a constitutional interpretation by the Michigan courts. Accordingly, we decline to determine the facial constitutionality of this language in advance of its application and construction by the Michigan courts.

### IV.

■ Finally, plaintiffs argued, and the district court agreed, that Section 5 acts as an unconstitutional prior restraint on expression because of the very large fines provided in the statute. The district court reasoned that the very large fines make the statute the equivalent of an unconstitutional padlocking or closure law, *see, e.g., Vance v. Universal Amusement Co.,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980), because, the district court concluded, the statute is designed to close down the commercial enterprises described in Section 5. In support of that conclusion, the district court cited the following portion of the legislative analysis of the enrolled bill:

> The bill would provide for fines for the dissemination of obscene material that reflect the billions of dollars at stake in the pornography business. Imposition of a fine of a few thousand dollars on an entrepreneur who may be making millions each year is only a slap on the wrist. The best way to curtail dissemination of pornography is to make it un-

---

**3.** A similar presumption in a Texas statute was struck down in *Davis v. State,* 658 S.W.2d 572 (Tex.Crim.App.1983). There, the statute had presumed that one "who promotes or wholesale promotes obscene material ... or possesses the same with intent to promote or wholesale promote it in the course of his business" had knowledge of the content and character of the material. V.T.C.A., Penal Code, § 43.23(e).

profitable, hence the bill's provisions for fines of up to $5 million. Jt.App. at 30–31. Furthermore, the district court concluded that because a sentencing judge may look at total profits, from sales of both protected and obscene materials, in determining the appropriate fine under Section 5, *protected* material will be "penalized," for there will be no judicial determination of just how much of the total profits was derived from dissemination of *obscene* material.

We reject this contention. We refuse to hold that a statute threatening fines that could impair the operation of a business is an impermissible prior restraint on expression, even where that business also involves dissemination of protected materials. The fact that a person does some business disseminating protected materials cannot immunize that person from large fines that may be imposed for violation of criminal law. *See Mabee v. White Plains Pub. Co.*, 327 U.S. 178, 184, 66 S.Ct. 511, 514, 90 L.Ed. 607 (1946); *Associated Press v. Labor Board*, 301 U.S. 103, 132–33, 57 S.Ct. 650, 655–56, 81 L.Ed. 953 (1937); *Sun Pub. Co. v. Walling*, 140 F.2d 445, 447 (6th Cir.), *cert. denied*, 322 U.S. 728, 64 S.Ct. 946, 88 L.Ed. 1564 (1944). Furthermore, as we indicated above, the financial condition of a defendant is an appropriate factor for a sentencing judge to consider when determining the appropriate fine to levy, and we find no case law to support the notion that a fine for illegal activity cannot be paid from lawfully obtained money, even where that lawfully obtained money is the result of disseminating protected expression.

*City of Paducah v. Investment Entertainment, Inc.*, 791 F.2d 463 (6th Cir.1986) is not to the contrary. There this Court struck down a statute which revoked all licenses for businesses violating an obscenity ordinance, holding that it would control all future expression by the offending businesses. *Id.* at 470. Here, by contrast, there is no prospective legal restraint on any expression, obscene or protected, that violators of either Section 5 or Section 6 may choose to undertake.

We simply find no basis for a conclusion that Section 5, large fines and all, constitutes a prior restraint on protected expression. Accordingly, we REVERSE and REMAND to the district court for proceedings consistent with this opinion.