**SEQUOIA BOOKS, INC.,**
**Plaintiff–Appellant,**

v.

**Dallas INGEMUNSON, in his capacity as State's Attorney of Kendall County, Illinois, and Kendall County, Illinois, Defendants–Appellees.**

No. 89–2542.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 1990.

Decided May 7, 1990.

Rehearing and Rehearing In Banc Denied
June 12, 1990.

Jeffrey B. Steinback, Genson, Steinback & Gillespie, Chicago, Ill., and J. Steven Beckett, Champaign, Ill., for plaintiff-appellant.

Charles E. Hervas, Phillip A. Luetkehans, James G. Sotos, James R. Schirott, Michael W. Condon, Schirott & Associates, Itasca, Ill., Jack Donatelli, Asst. Atty. Gen., Office of the Atty. Gen., Crim. Appeals Div., Chicago, Ill., and James E. Ryan, State's Atty., Office of the State's Atty. of Dupage County, Wheaton, Ill., for defendants-appellees and Dupage County, amicus curiae.

Before CUMMINGS, POSNER and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Sequoia Books, Inc. ("Sequoia") owns and operates a bookstore on U.S. Route 30 in Kendall County, Illinois, where sexually oriented material is sold. Sequoia claims that provisions within the Illinois obscenity statute, which allow forfeiture of property derived from or used to commit obscenity offenses, are facially unconstitutional. Sequoia filed suit in federal district court pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief against the local state's attorney (defendant) and Kendall County to prohibit use of the new forfeiture provisions. The district court granted the defendants' motion to dismiss, holding that these new amendments to the Illinois Criminal Code of 1961 do not on their face represent a prior restraint in violation of the First Amendment, are not unconstitutionally vague or overbroad, and do not violate the Fourth Amendment.[1] *Sequoia Books, Inc. v. Ingemunson*, 713 F.Supp. 1233 (N.D.Ill.1989). This appeal calls for three determinations, which we resolve with the following holdings. First, Sequoia has standing to bring this action. Second, the provisions as written abridge no rights guaranteed by the Constitution. Third, forfeiture under the provisions may not be based solely upon obscenity convictions which occurred before the effective date of the statute without violating the constitutional prohibition against *ex post facto* laws.

## I.

## BACKGROUND

With the governor's certification of modifications made by the Illinois General Assembly, forfeiture provisions were added to Illinois' obscenity statute in May 1988. An introduction to the provisions stated that "[o]bscenity is a far-reaching and extremely profitable crime" and that "existing sanctions do not effectively reach the money and other assets generated by" commerce prohibited by the obscenity statute. Ill.Rev.Stat. ch. 38, ¶ 11–20(g)(1). Repro-

---

1. Sequoia has not pursued the Fourth Amendment claim in this appeal.

duced in part in the margin,[2] the provisions reach only individuals and businesses already convicted at least twice under the state obscenity statute, which prohibits the selling or publishing of obscene materials. Ill.Rev.Stat. ch. 38, ¶ 11–20(a).[3] Upon the second or any subsequent conviction the provisions allow forfeiture of all types of property that can be tied to the latest conviction. Property falling into one of two broad categories may be seized and forfeited: (1) that which constitutes or is derived from the proceeds received "directly or indirectly" through the latest violation of the obscenity law, Ill.Rev.Stat. ch. 38, ¶ 11–20(g)(3)(i); and (2) that which has been used "wholly or in part" to violate the obscenity law, ch. 38, ¶ 11–20(g)(3)(ii). Seizure and destruction or resale of forfeited property is allowed under court-supervised conditions following a hearing. Ch. 38, ¶ 11–20(g)(6).

Sequoia does not challenge the constitutionality of the Illinois obscenity statute nor any of Sequoia's prior obscenity convictions under the standards set forth in the line of Supreme Court cases that excludes obscene materials from First Amendment protection. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419.[4] It challenges only use of the forfeiture provisions to punish obscenity convictions.

Sequoia sells sexually explicit magazines, paperback books, videotapes, motion picture films, and "novelties." Between January 22, 1985, and September 24, 1987, the

---

2. (g) Forfeiture of property:
 * * * * * *
 (2) Definitions.
 * * * * * *
 (ii) "Property" means:
 (a) real estate, including things growing on, affixed to and found in land, and any kind of interest therein; and
 (b) tangible and intangible personal property, including rights, privileges, interests, claims and securities.
 (3) Forfeiture of property. Any person who has been convicted previously of the offense of obscenity and who shall be convicted of a second or subsequent offense of obscenity shall forfeit to the State of Illinois:
 (i) Any property constituting or derived from any proceeds such person obtained, directly or indirectly, as a result of such offense; and
 (ii) Any of the person's property used in any manner, wholly or in part, to commit such offense.
 (4) Forfeiture Hearing. At any time following a second or subsequent conviction for obscenity, the court shall, upon petition by the Attorney General or the State's Attorney, conduct a hearing to determine whether there is any property that is subject to forfeiture as provided hereunder. At the forfeiture hearing the People shall have the burden of establishing by [a] preponderance of the evidence that such property is subject to forfeiture.
 (5) Prior Restraint.
 Nothing in this subsection shall be construed as authorizing the prior restraint of any showing, performance or exhibition of allegedly obscene films, plays or other presentations or of any sale or distribution of allegedly obscene materials.
 (6) Seizure, Sale and Distribution of the Property.
 (i) Upon a determination under subparagraph (4) that there is property subject to forfeiture, the court shall authorize the Attorney General or the State's Attorney, except as provided in this Section, to seize all property declared forfeited upon terms and conditions as the court shall deem proper.
 (ii) The Attorney General or State's Attorney is authorized to sell all property forfeited and seized pursuant to this Article, and, after the deduction of all requisite expenses of administration and sale, shall distribute the proceeds of such sale, along with any moneys forfeited or seized, * * *.
 * * * * * *
 (7) Construction of subsection (g).
 It shall be the intent of the General Assembly that this subsection be liberally construed so as to effect its purposes. * * * Subsection (g) also provides that (1) seized material deemed obscene by the court is to be destroyed by the authorities, and (2) all money and sale proceeds gathered under Subsection (g) are to be distributed to local and state agencies for the investigation and prosecution of child pornography and obscenity cases.

3. Also criminalized by the Illinois obscenity statute is the presentation or direction of "an obscene play, dance or other performance." Ill. Rev.Stat. ch. 38, ¶ 11–20(a)(2). The following treatment of this facial challenge focuses on bookstores and obscenity in its published form. There appears to be no reason to anticipate unconstitutional application of the forfeiture provision to defendants convicted of presenting obscene performances. Constitutional defects, if any, that depend upon the specific media or property used by the offender must present themselves for resolution in future cases.

4. *Miller* set forth guidelines for determining what works may not be regulated by states as obscene. 413 U.S. at 24–25, 93 S.Ct. at 2614–16.

defendant state's attorney [5] secured twelve obscenity convictions and two criminal contempt convictions against Sequoia. A list of reported state cases involving obscenity prosecutions against Sequoia is gathered in *Sequoia Books, Inc. v. Randall*, No. 87–C–9549, 1987 WL 27433 (N.D.Ill. Dec. 7, 1987) (LEXIS, Genfed, Dist file), and need not be reproduced here. Despite the lengthy obscenity record compiled by Sequoia, however, the parties agree that Sequoia has not been convicted of obscenity since January 21, 1987, well in advance of January 1, 1989, the effective date of the forfeiture provisions.

The defendant has not attempted to use the forfeiture provisions against Sequoia. However, at oral argument in this appeal the defendant's assistant represented that the defendant's office plans to make use of the provisions against Sequoia if the provisions survive this challenge.[6]

## II.

## STANDARD OF REVIEW

Neither party has called attention to factual disputes. This appeal calls for an analysis of constitutional principles only. Thus we review the propriety of the district court's grant of the motion to dismiss *de novo*.

## III.

## STANDING

Sequoia has not been subjected to forfeiture. Therefore its attack on the forfeiture

provisions is facial. The district court did not refer to the question of standing in its opinion and the issue was not briefed by the parties on appeal. Yet in light of our conclusion below that the state may not subject Sequoia to a forfeiture action without first prosecuting and prevailing in at least one further criminal obscenity case, the issue of standing deserves special attention. In analyzing an obscenity case, the Supreme Court recently had occasion to remind federal appellate judges that they are responsible for examining their own jurisdiction in each case, particularly with regard to standing. *FW/PBS, Inc., dba Paris Adult Bookstore II v. City of Dallas*, — U.S. —, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603.

Sequoia asserts that as a frequent defendant in obscenity prosecutions, it considers itself a likely target under the provisions. Yet the record does not contain any hint that there was a lawmaking and enforcement scheme in passing the forfeiture provisions to act specifically against Sequoia. Therefore Sequoia cannot rely upon such precedent as *Entertainment Concepts, Inc. III v. Maciejewski*, 631 F.2d 497 (7th Cir.1980), certiorari denied, 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346. In *Maciejewski*, a village board of trustees passed two zoning ordinances restricting "adult" movie theaters shortly after the plaintiff, the only movie theater in town, announced that it would begin to show "adult" movies.

5. In its Amended Complaint, Sequoia added Kendall County as a defendant. Kendall County was not represented separately in this appeal and for the purposes of this opinion all references to defendant Ingemunson include the County.

6. The forfeiture provisions should not be confused with the separate "padlock" provisions of the Illinois Criminal Code recently found unconstitutional by the Illinois Supreme Court in a case that also involved the plaintiff and the defendant in the present appeal. *Illinois v. Sequoia Books, Inc.*, 127 Ill.2d 271, 130 Ill.Dec. 235, 537 N.E.2d 302 (1989), certiorari denied, — U.S. —, 109 S.Ct. 2447, 104 L.Ed.2d 1002. Acting pursuant to a nuisance abatement provision, Ill.Rev.Stat. ch. 38, ¶ 37–4, the Kendall County State's Attorney requested an injunction against Sequoia as a public nuisance. The trial

court enjoined Sequoia from operating at its current location for one year unless it posted a bond of $5,000. *Id.* 127 Ill.2d at 277–278, 130 Ill.Dec. 235, 537 N.E.2d 302. The state Supreme Court held that the nuisance abatement provisions violated the First Amendment when applied "in order to penalize or prevent the use of real property to purvey obscenity." *Sequoia Books*, 127 Ill.2d at 286, 130 Ill.Dec. 235, 537 N.E.2d 302. The state Supreme Court relied primarily upon the analysis set forth in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, and its progeny. See also *City of Paducah v. Investment Entertainment, Inc.*, 791 F.2d 463 (6th Cir.1986) (holding unconstitutional city plan to use nuisance abatement ordinance to revoke licenses of "adult" bookstores and theaters), certiorari denied, 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 290.

Under such circumstances, the Court found that the need for standing was self-evident and that the plaintiff did not need to first expose itself to actual arrest or prosecution in order to challenge the statute. *Id.* at 500.

 The question then is whether the alleged threatened use of the forfeiture provisions represents a possibility that is " 'distinct and palpable.' " *Meese v. Keene,* 481 U.S. 465, 472, 107 S.Ct. 1862, 1866–67, 95 L.Ed.2d 415 (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556). Where self-censorship is a danger, plaintiff need show only that it has "an actual and well-founded fear that the law will be enforced." *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 642–43, 98 L.Ed.2d 782. Moreover, the usual rule that the courts should avoid constitutional adjudication whenever possible carries less weight in the First Amendment context. See *Secretary of State of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 956, 104 S.Ct. 2839, 2846–47, 81 L.Ed.2d 786.

 The threat to Sequoia is distinct and palpable and Sequoia's fear is well-founded. Sequoia has "such a stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issue upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663. The Supreme Court in *American Booksellers Association* and this Court in *American Booksellers Ass'n, Inc. v. Hudnut,* 771 F.2d 323, 327 (1985), affirmed on appeal, 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291, rehearing denied, 475 U.S. 1132, 106 S.Ct. 1664, 90 L.Ed.2d 206 allowed publishers to make pre-enforcement constitutional challenges to laws that could affect their ability to engage in protected expression. Although application of the Illinois forfeiture provisions to Sequoia ex-

plicitly depends upon at least one further obscenity conviction and the holding of a forfeiture hearing, the special flexibility, or "breathing room," that attaches to standing doctrine in the First Amendment context saves Sequoia's standing in this case. See *Broadrick v. Oklahoma,* 413 U.S. 601, 610–12, 93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830. Sequoia does not have a "free" obscenity conviction coming; under our *ex post facto* analysis one new obscenity conviction would give the state sufficient grounds to set in motion a forfeiture hearing. To the extent the provisions require Sequoia and similarly situated businesses to exercise self-censorship, they are required to exercise self-censorship today.

This holding is not inconsistent with that portion of *FW/PBS, Inc.* in which Justice O'Connor, writing for the majority, found that the Court could not reach the merits of challenges to several provisions within a zoning, inspection, and licensing scheme for sexually oriented businesses passed by a city council because no party faced injury from those provisions. *FW/PBS, Inc.,* 110 S.Ct. at 608–10. In that case, licenses could be denied based upon a set of criteria involving past convictions and previous license denials or revocations. The Court permitted a facial challenge to the licensing scheme in general. *Id.* at 604. Yet no party demonstrated to the Court that the city could deny that party a license under two particular provisions. *Id.* at 607–09. The facial challenge permitted in *FW/PBS, Inc.* resembles Sequoia's claim—Sequoia and similarly situated bookstores unquestionably risk forfeiture actions upon new obscenity convictions.[7]

## IV.

## CONSTITUTIONAL ISSUES

### A. *Prior Restraint*

 Sequoia asserts that the forfeiture provisions represent a prior restraint of

---

7. Less readily distinguishable is the Court's decision, noted in the margin of *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 928 n. 11, 103 L.Ed.2d 34, to decline to reach the constitutionality of post-trial forfeiture in that case. The Court did not criticize such strongly

worded precedent as *Virginia v. American Booksellers,* however, and thus we read the decision in *Fort Wayne* as one tied to the facts of that case. We are satisfied that the issues are sufficiently concrete in this appeal.

protected speech in violation of such Supreme Court precedent as *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, and *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357. As a prior restraint, Sequoia argues, the forfeiture provisions should meet the procedural safeguards delineated in *Freedman v. Maryland*, 380 U.S. 51, 58–60, 85 S.Ct. 734, 738–40, 13 L.Ed.2d 649, and do not. Prior restraint doctrine embodies this principle: "Acts of expression that could be sanctioned by means of criminal punishment or a civil damage award may not be regulated 'in advance.'" Blasi, *Toward a Theory of Prior Restraint: The Central Linkage*, 66 Minn.L.Rev. 11, 11 (1981). *O'Brien* involved a First Amendment challenge to a statute imposing criminal sanctions for the destruction of a draft registration certificate. In general terms, qualified below, the *O'Brien* test for constitutionality applies to government regulation of unprotected speech when that regulation has the effect of impinging on protected speech. The *O'Brien* test requires inquiry into the weight of the governmental interest at issue, the government's intent to suppress protected speech, and the existence of alternative methods of achieving the governmental interest without impinging upon protected expression. *Id.* 391 U.S. at 377, 88 S.Ct. at 1679.

Because Sequoia's stock in trade includes items that may be deemed obscene by the courts at some future date, Sequoia argues that the forfeiture provisions "chill" its exercise of the constitutional right to collect and sell non-obscene material free from government interference. Skittish about obscenity convictions that could lead to economically devastating forfeiture actions, Sequoia might scale back on or discontinue the sale of non-obscene materials which it fears might be deemed obscene. Sequoia suggests that "adult" bookstores might even be forced out of business entirely because of the forfeiture threat, depriving the public of a source of expressive materials that are protected because, for example, they have some arguably artistic value.

Sequoia argues that this chill is intensified by the fact that the forfeiture provisions not only permit authorities to seize and destroy materials deemed obscene, but also permit them to seize and resell valuable real estate and other property "derived from" or used to facilitate the sale of obscene materials. If Sequoia takes in $3,000 for the sale of magazines adjudged obscene, for example, it may as a consequence lose a $3,000 cash register, rendering it unable to sell even the most high-minded political journals if it so chose. Similarly, upon proof that a bookstore used the profits from its sale of obscene magazines to purchase copies of *The Yearling* or *The Communist Manifesto*, the state could include those clearly protected books on its list of materials for seizure and resale.

The defendant does not disagree with Sequoia's reading of the plain language of the provisions that they would appear to permit forfeiture, under the proper circumstances, of such valuable assets as cash registers, film projectors, and real estate.[8] He asserts, however, that forfeiture is to be performed under the terms of the forfei-

---

**8.** Though it is not part of the record in this case, the Attorney General's Commission on Pornography recommended that state legislatures enact forfeiture provisions tied to obscenity violations and cited with approval the use of one such provision to obtain forfeiture in one case of property worth up to $100,000, including two computer systems and two projection screen televisions. Attorney General's Commission on Pornography Final Report 497–498 (July 1986).

In 1984, Congress expanded the definition of "racketeering activity" within the Racketeer Influenced and Corrupt Organizations Act (RICO) to include "dealing in obscene matter." Pub.L. No. 98–473, § 1020(1), 98 Stat. 2143, codified at 18 U.S.C. § 1961(1)(A). As highlighted in *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct. 916, states such as Indiana have followed this pattern closely, adding obscenity violations to the list of predicate offenses listed in the state's RICO statute. Justice Stevens, in his dissent and partial concurrence to *Fort Wayne Books*, lists the states that have taken this path. 109 S.Ct. at 938 n. 28.

As noted below, however, in the context of discussion of *United States v. Pryba*, 900 F.2d 763 (4th Cir.1990), it is important to distinguish the provisions at issue in this appeal from the federal RICO forfeiture provisions and imitative state provisions, which call for forfeiture of "any interest" gained or used in connection with a racketeering enterprise.

ture provisions without regard to the communicative content of the property. As a result, the defendant maintains, use of forfeiture as a subsequent punishment for violation of the obscenity statute does not implicate the First Amendment.

The district court agreed with the defendant's view of this question and found authority in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568, to dismiss Sequoia's prior restraint argument. We agree that *Arcara* dictates the result on this question. There the owners and operators of an "adult" bookstore challenged on constitutional grounds a civil complaint seeking closure of the store for one year for violation of a state public health law. An undercover sheriff's investigation had revealed that the store was being used as a meeting place for prostitution and other lewd activities. The New York Court of Appeals found that because bookselling is protected speech, *O'Brien* should apply. The Court of Appeals then held that the closure remedy violated *O'Brien* as an incidental restraint on speech that was broader than necessary to achieve its purpose. The United States Supreme Court rejected this application of *O'Brien*'s least restrictive means prong. The Court held that the First Amendment simply did not apply to the case because "the imposition of the closure order has nothing to do with any expressive conduct at all." 478 U.S. at 706 n. 2, 106 S.Ct. at 3177 n. 2. Writing for the Court, Chief Justice Burger stated that the crucial difference between the draft-card burner in *O'Brien* and the illicit sexual activity in *Arcara* is that the latter "manifests absolutely no element of protected expression." 478 U.S. at 705, 106 S.Ct. at 3176. The Court stated that the four-part *O'Brien* test had been limited to two contexts: (1) cases in which the conduct directly penalized (*e.g.*, draft-card burning), while it may not be protected in itself, has a "significant expressive element"; and (2) those in which penalizing that conduct "has the inevitable effect of singling out those engaged in expressive activity". 478 U.S. at 706–07, 106 S.Ct. at 3177. *O'Brien* illustrates the first category. The second is illustrated by

*Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295, in which a tax imposed only upon large sales of newsprint and ink was struck down because of its directly negative effect on the newspaper industry.

■ In *Arcara* a bookstore was shut down because of illicit sexual activity on the premises. The present case involves the legislated interest in forfeiting specified bookstore property because obscene materials have been sold on the premises. Sequoia argues that the fact that the provisions here may be used against booksellers based on previous obscenity convictions for materials sold at their establishments makes *Arcara* distinguishable. We disagree. It does not settle the issue to note that the retail seller of non-obscene books and magazines, by playing a role in the process of the distribution of reading materials, is entitled to First Amendment protections. See *Smith v. California*, 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959). It is beyond question that the sale of protected reading materials, unlike the business of prostitution, has a "significant expressive element." *O'Brien* does not apply, however, because the State of Illinois does not attempt here to regulate the sale of protected reading materials or to close bookstores. It merely punishes past obscenity convictions. Distribution of obscene materials is no more protected by the First Amendment than is prostitution. See *Pinkus v. United States*, 436 U.S. 293, 303–04, 98 S.Ct. 1808, 1814–15, 56 L.Ed.2d 293. As discussed below in the context of the prohibition of *ex post facto* laws, the Illinois General Assembly voted to exact from those who deal heavily in obscene materials a correspondingly heavy penalty. The legislature has grounded this penalty in prior judicial determinations of obscenity.

In her concurrence to *Arcara*, 478 U.S. 697, 708, 106 S.Ct. 3172, 3178, 92 L.Ed.2d 568 (O'Connor, Stevens, JJ., concurring), Justice O'Connor stated, "If * * * a city were to use a nuisance statute as a pretext for closing down a bookstore because it

sold indecent books or because of the perceived secondary effects of having a purveyor of such books in the neighborhood, the case would clearly implicate First Amendment concerns and require analysis under the appropriate First Amendment standard of review." This case involves a forfeiture statute, not a closure statute. Sequoia is unconvincing in its argument that the "ultimate goal" of the forfeiture provisions is closure of "adult" bookstores (plaintiff's Br. at 15). There is no "pretext" evident in the language of the forfeiture provisions. Under its terms anyone convicted of obscenity is subject to forfeiture of property but only to exactly the degree that they profited from that crime economically or to the degree that they used property to effectuate that crime. As Justice White recently stated:

> [D]eterrence of the sale of obscene materials is a legitimate end of state anti-obscenity laws, and our cases have long recognized the practical reality that "any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene."
>
> *Fort Wayne Books, Inc. v. Indiana*, [489] U.S. [46], 109 S.Ct. 916, 925–926 (quoting *Smith v. California*, 361 U.S. 147, 154–155, 80 S.Ct. 215, 4 L.Ed.2d 205).

Just as in *Arcara*, there is no advance determination under the forfeiture statute that particular materials may not be distributed. Compare *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316–317, 100 S.Ct. 1156, 1161–1162, 63 L.Ed.2d 413 (authorities could not enjoin future exhibition of films not yet determined to be obscene). There is only a determination—following criminal convictions subject to the constitutional protections of *Miller*—that materials for sale are obscene. Authorities are, of course, limited by the First and Fourth Amendments in any initial searches and seizures. *Fort Wayne Books*, 489 U.S. 46, 109 S.Ct. 916, 927 ("[T]his Court has repeatedly held that rigorous procedural safeguards must be employed before expressive materials can be seized as 'obscene.'"). The forfeiture provisions do not

point to excessive or erroneous deterrence. The *in terrorem* effects of which Sequoia complains are simply the intended by-product of a legislative decision to punish those who deal in obscene materials and to make that business more costly. See *511 Detroit Street, Inc. v. Kelley*, 807 F.2d 1293, 1299 (6th Cir.1986) (state obscenity statute threatening large fines not impermissible prior restraint), certiorari denied, 482 U.S. 928, 107 S.Ct. 3211, 96 L.Ed.2d 698.

The requirements of *Freedman* are not even remotely implicated in this case because the forfeiture provisions do not represent a potential "censorship system." *Freedman*, 380 U.S. at 58, 85 S.Ct. at 738–39. The Illinois General Assembly is not licensing bookstores; it is simply punishing obscenity violations, some of which occur through bookstore operations.

Our holding is consistent with the Fourth Circuit, which recently rejected constitutional challenges to the application of the mandatory forfeiture provisions within the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1963–1964, where obscenity violations were the predicate acts constituting a pattern of racketeering activity. *United States v. Pryba*, 900 F.2d 748 (4th Cir.1990). Yet the Illinois forfeiture provisions on their face are not so sweeping in scope as the federal RICO forfeiture provisions. The RICO forfeiture provisions provide for forfeiture to the United States of

(1) any interest * * * acquired or maintained [in racketeering activities];

(2) any—

 (A) interest in;

 (B) security of;

 (C) claim against; or

 (D) property or contractual right of any kind affording a source of influence over;

any enterprise * * * established, operated, controlled, conducted, or participated in the conduct of [racketeering activities]; and

(3) any property constituting, or derived from, any proceeds * * * obtained, di-

rectly or indirectly, from racketeering activity * * *.

18 U.S.C. § 1963(a).

By focusing on "any interest" in "any enterprise" which constitutes racketeering activity, these provisions suggest the authority to forfeit the entire business assets of a business enterprise that involves racketeering. By contrast, provisions at issue in this appeal rest entirely on the nexus between materials deemed obscene and property connected with the sale of that particular material. Therefore, we need not go so far today as to pass on the constitutionality of the federal RICO forfeiture provisions in the "adult" bookstore context.

Of course if authorities in Illinois attempt to reach beyond the language of the forfeiture provisions to limit protected expression on the basis of the content of that expression under the pretext of purportedly content-neutral forfeitures, the courts are open to challenges on those grounds. See *Arcara*, 478 U.S. at 707 n. 4, 106 S.Ct. at 3178 n. 4. The Constitution will not tolerate a violation of "the government's paramount obligation of neutrality in its regulation of protected communication." *Young v. American Mini Theatres*, 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (Stevens, J., joined by Burger, C.J., White and Rehnquist, JJ.).

B. *Vagueness and Overbreadth*

Sequoia asserts that both the definition of "property" and the definition of property that may be forfeited are vague as well as overbroad. Sequoia focuses on the extent to which non-obscene materials—including protected communicative items—would be subject to forfeiture and also argues that the language is so expansive that it will invite overly comprehensive forfeitures by authorities.

■ A penal statute must define a criminal offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903. In the First Amendment context "the doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605. The duty of the courts in pre-enforcement review of the constitutionality of statutes based on their language is to consider likely applications of the statutes. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772.

■ Sequoia's vagueness and overbreadth arguments are in essence extensions of its prior restraint claim: language permitting forfeiture of "property used in any manner, wholly or in part, to commit" an obscenity offense could lead to forfeiture of such disparate types of property as books containing protected expression and real estate leaseholds. That appears to be the case. Yet Sequoia has failed to show how the provisions are unclear or overbroad. Content-neutral application of this subsection will require authorities to respect the requirement that the property at issue must have been used "to commit" the latest criminal offense. Authorities must petition for a hearing, at which they must prove by a preponderance of the evidence that the property sought was so used. Ill. Rev.Stat. ch. 38, ¶ 11–20(g)(4). Only after such a hearing is held may authorities seize any property under court-approved conditions. Ch. 38, ¶ 11–20(g)(6). There is no need to anticipate unreasonable interpretations by the Illinois courts. See *Young v. American Mini Theatres*, 427 U.S. 50, 60–61, 96 S.Ct. 2440, 2447–48, 49 L.Ed.2d 310 (some uncertainty permissible where statute "readily subject to a narrowing construction by the state courts").

V.

RETROACTIVITY

■ One further question of constitutional law is squarely presented by Sequoia's case since it is immediately subject to

forfeiture if the answer is yes, but not so subject if the answer is no: May the state of Illinois apply the forfeiture provisions to those who have not been convicted of obscenity after the effective date of the provisions, but who have two or more earlier obscenity convictions? Our answer is that it may not.

The statutory provisions do not address the retroactivity issue. The district court in the present case did not address the retroactivity issue in its published opinion. Two doctrines suggest themselves as possible barriers to retroactive use of the forfeiture provisions: the prohibition of *ex post facto* laws found in Article I of the Constitution and the Due Process Clause of the Fourteenth Amendment. The *ex post facto* doctrine is applicable, so that there is no need to explore whether the retroactive effects of an immediate forfeiture action against Sequoia would be so unexpected and disruptive as to deny Sequoia due process of law.

The Constitution explicitly bars states from passing *ex post facto* laws. U.S. Const. art. I, § 10 cl. 1. The Supreme Court long ago established that legislative bodies must not only refrain from punishing prior behavior under newly minted criminal statutes, but they are also prohibited from imposing harsher penalties retrospectively. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648. "[A]lmost from the outset, we have recognized that central to the *ex post facto* prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (quoting *Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17).

The difficult question in this case is whether the forfeiture provisions are penal legislation, for if they are not then they do not fall within the protection of the rule against *ex post facto* law-making. *Calder v. Bull*, 3 U.S. (3 Dall.) at 400; *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17 n. 13, 97 S.Ct. 1505, 1515 n. 13, 52

L.Ed.2d 92. It has long been recognized that creation of the sanction of forfeiture for remedial purposes—even if the penalty would take a severe toll—may be considered a civil action outside the scope of constitutional protections extended to criminal defendants. See *Helvering v. Mitchell*, 303 U.S. 391, 400–04, 58 S.Ct. 630, 633–36, 82 L.Ed. 917; *United States v. D.K.G. Appaloosas, Inc.*, 829 F.2d 532, 540–45 (5th Cir.1987), certiorari denied *sub nom. One 1984 Lincoln Mark VII Two-Door v. United States*, 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481. Yet certain forfeiture statutes have been considered criminal for certain constitutional purposes. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (forfeiture statute subject to Fourth Amendment requirements); *United States v. United States Coin and Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (forfeiture proceeding criminal for some Fifth Amendment purposes); cf. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362–63, 104 S.Ct. 1099, 1104–05, 79 L.Ed.2d 361 (forfeiture statute not subject to double jeopardy clause). Moreover, it has also long been recognized that the question of whether a particular statute is criminal or civil is "one of statutory construction." *Helvering*, 303 U.S. at 399, 58 S.Ct. at 633. Various tests have been used to determine whether a statute is "essentially criminal." *One Assortment of 89 Firearms*, 465 U.S. at 362–63, 104 S.Ct. at 1104–05; *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (question is whether legislature aimed to "punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation"). The modern test focuses upon legislative intent. Courts are to ask first whether the legislative body "indicated either expressly or impliedly a preference for one label or the other." If the preference appears to have been to label the proceedings civil, then the second inquiry is "whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." *United*

*States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742.[9]

Signs do not all point in one direction. It appears nevertheless that the Illinois General Assembly impliedly indicated an intention to create a punitive measure in the forfeiture provisions. First, it is found within the Illinois Criminal Code. Second, it is introduced by a legislative declaration defining the provisions as measures "to supplement existing sanctions," an obvious reference to existing criminal penalties in the obscenity statute. This introduction suggests that the forfeiture provisions are essentially extensions of the existing criminal penalties for violation of the obscenity statute.[10] Third, the money and sale proceeds of all forfeited property is to be distributed to police and prosecutors for obscenity law enforcement efforts. There is one countervailing signal, however, which requires analysis under the second prong of the criminal-civil test: forfeiture is to be effectuated through a hearing at which the government is to prove its case for forfeiture only by a preponderance of the evidence. This standard detracts from the case that the forfeiture provisions are a penal measure.

Yet even if that preponderance standard can be taken as proof that the forfeiture provisions are intended to establish a civil proceeding, there is the clearest proof that the statutory scheme at issue is punitive in both purpose and effect so as to negate

that intention. The forfeiture statute does not stand alone as an administrative sanction meant to be used as a tool to recoup the various costs to local and state agencies that could be attributed to the obscenity industry. Instead, the forfeiture penalty is inextricably tied to criminal violations of the obscenity statute. The assets and property to be forfeited are those constituting, derived from, or used to commit the latest obscenity offense for which the property owner was convicted in a criminal proceeding. The forfeiture provisions do not independently establish a civil forfeiture system. They are simply an addendum to the criminal code that allows additional punishment for the latest obscenity conviction of someone who has been convicted of obscenity. The forfeiture provisions do not cover a broader range of conduct than is proscribed by the obscenity statute; by design, they cover precisely the same conduct. Cases such as *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, teach that if a defendant is acquitted of a criminal charge, the principles of res judicata, collateral estoppel, and double jeopardy do not bar a separate, subsequent civil forfeiture action involving the same underlying facts. See *One Assortment of 89 Firearms,* 465 U.S. at 361, 104 S.Ct. at 1104. In contrast, acquittal on the second or latest obscenity charge under the Illinois forfeiture provisions prevents forfeiture altogether. Conviction on that charge ensures forfeiture of assets associated with that conviction, pro-

**9.** In addressing the second step of the test, the Court has listed the following considerations: Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter,* whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in different directions.

*Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (quoted with approval in *One Assortment of 89 Firearms,* 465 U.S. at 365 n. 7, 104 S.Ct. at 1106 n. 7).

**10.** The Supreme Court observed in *Helvering v. Mitchell* that the existence of "two separate and distinct provisions imposing sanctions" for the same offense, one of which is "obviously a criminal one," may suggest that the other sanction is civil. 303 U.S. at 404–05, 58 S.Ct. at 635–36. In this case the provision at issue is not paired with a pre-existing criminal forfeiture provision in the Illinois obscenity statute. Instead, it appears that the criminal sanctions were "supplemented" with another criminal sanction. Upon a second or subsequent conviction, the offender was to be not only imprisoned and possibly fined as a Class 4 felon, Ill.Rev.Stat. ch. 38, ¶ 11–20(d), as provided in Ill.Rev.Stat. ch. 38, ¶¶ 1005–8–1(a)(7), 1005–9–1(a)(1), but he was also to forfeit all money and assets associated with that latest conviction.

viding prosecutors choose to file for forfeiture.

In explaining the genesis and import of a per se rule against *ex post facto* legislation, Chief Justice Chase long ago stated that the rule was included in the Constitution as a check on the creation of statutes that may result in arbitrary or vindictive punishments. *Calder*, 3 U.S. (3 Dall.) at 389. This policy continues to be recognized by the Supreme Court. See *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17. The Illinois legislature clearly intended to impose potentially crippling punishment upon entrepreneurs in the obscenity trade—as retribution for their activities and as deterrence from further obscenity violations. That is not unconstitutional, but retroactive application of this criminal provision would be.

It does appear, however, that state authorities may rely on one conviction dating from before the enactment of the forfeiture provisions for the purpose of satisfying the triggering mechanism of the provisions so long as there is a second conviction that followed enactment of the provisions. In *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258–59, 92 L.Ed. 1683, the Supreme Court found no violation of the Double Jeopardy Clause in the sentencing of a defendant under a state habitual offender sentencing scheme even though one of the four prior convictions which caused his sentence to be increased occurred prior to the enactment of the sentencing scheme. As this Court has interpreted *Gryger*, it allows the government to subject a defendant to "an increased penalty for the offense which occurred *after* enactment" of the relevant statute, *United States v. Karlin*, 852 F.2d 968, 973–974 (1988) (emphasis added), certiorari denied, —— U.S. ——, 109 S.Ct. 1142, 103 L.Ed.2d 202; see also *United States v. Panebianco*, 543 F.2d 447, 453 n. 4 (2d Cir.1976) ("As long as the second offense occurs after passage of the punishment-enhancing statute, however, there is no retroactivity problem. [citing *Gryger*]."), certiorari denied, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553. Retroactive application of the provisions at issue here, without first securing one further obscenity conviction, would penalize Sequoia and similarly situated parties much more severely for offenses which were committed entirely before enactment of the forfeiture provisions than would have been possible under the law at the time Sequoia last committed an act for which it was convicted and therefore would be impermissible.

This holding is not contrary to cases that have interpreted various forfeiture provisions passed by Congress as being civil in form and effect for the purposes of constitutional analysis. See, *e.g.*, *United States v. D.K.G. Appaloosas, Inc.*, 829 F.2d 532 (5th Cir.1987); see also *United States v. Nichols*, 841 F.2d 1485, 1486–88, 1510–11 (10th Cir.1988) (majority and dissenting discussion of criminal versus civil nature of forfeiture provisions). The test established by the Supreme Court requires courts to gauge each statute on its own terms and to avoid lumping similar-sounding statutes into a "criminal" or "civil" category without careful study. Such a study requires a conclusion that this forfeiture provision is criminal and may not be applied to pre-existing convictions alone.

## VI.

## CONCLUSION

Sequoia has standing to make this facial challenge. The provisions are not on their face in violation of the Constitution, though they may not be constitutionally applied where the subject of forfeiture has not been convicted at least one time subsequent to enactment of the provision. Therefore, the judgment of the district court is affirmed.