**Pastor Matthew TREWHELLA and James Long, Plaintiffs,**

v.

**CITY OF LAKE GENEVA, WISCONSIN and Mayor Charlie Rude, in his official capacity,[1] Defendants.**

No. 01–C–329.

United States District Court, E.D. Wisconsin.

March 17, 2003.

---

1. Because the mayor of the City of Lake Geneva is being sued in his official capacity, the court substitutes current Mayor Charlie Rude for former Mayor Spyro Condos. *See* Federal Rule of Civil Procedure 25(d). *See also* Defendant's Statement of Undisputed Facts Under Local Rule 56.2(A) at ¶ 10. Although Rude was elected in October of 2001, the parties failed to move for substitution.

Michael DePrimo, Brian Fahling, Stephen Crampton, American Family Association, Center for Law & Policy, Tupelo, MS; Michael D. Dean, Waukesha, WI, for Plaintiff or Petitioner.

Michael J. Rielly, City Attorney, City of Lake Geneva, Lake Geneva, WI, for Defendant or Respondent.

## DECISION AND ORDER

CURRAN, District Judge.

Pastor Matthew Trewhella and James Long are suing the City of Lake Geneva, Wisconsin and its Mayor, Charlie Rude, in his official capacity, for allegedly violating their civil rights. The City of Lake Geneva, on November 25, 2000, enacted Ordinance No. 00–14. Subsequently, on May 14, 2001, the City Council repealed Ordinance 00–14 and adopted a new Ordinance No. 01–22. Both Ordinances sought to regulate parades and public assemblies in the City of Lake Geneva. The Plaintiffs say that they wanted to picket in public areas in front of a Planned Parenthood Clinic to protest abortions. In their Amended Complaint, the Plaintiffs challenge both ordinances and allege that their First Amendment rights to free speech and assembly and their Fourteenth Amendment rights to due process and equal protection have been violated. They are seeking injunctive and declaratory relief, compensatory damages, costs and attorney fees pursuant to 42 U.S.C. §§ 1983 & 1988. Long is also seeking nominal damages.

After the deadline for the completion of discovery passed, all parties moved for summary judgment on the grounds that no material facts are in dispute and that they are entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(c). This motion is now fully briefed.

## I. *LEGAL STANDARDS FOR SUMMARY JUDGMENT*

Summary judgment is appropriate only when the pleadings, depositions, and other materials in the record demonstrate that there are no genuine issues of material fact and that the moving parties are entitled to judgment as a matter of law. *See Adreani v. First Colonial Bankshares*

*Corporation,* 154 F.3d 389, 393 (7th Cir. 1998). The evidence must be considered in a light most favorable to the nonmovants and all reasonable inferences must be drawn in favor of the nonmovants. *See Bell v. Environmental Protection Agency,* 232 F.3d 546, 549 (7th Cir.2000). To defeat a motion for summary judgment, the nonmoving parties cannot rest on their pleadings, but must demonstrate that specific, material facts exist which give rise to a genuine issue. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either side. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. Conclusory allegations by the parties opposing the motion cannot defeat the motion. *See Hedberg v. Indiana Bell Telephone Company,* 47 F.3d 928, 931 (7th Cir.1995). The nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Electtic Industrial Company v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

At the summary judgment stage the judge's function is to determine whether there is sufficient evidence favoring the nonmoving parties for a jury to return a verdict for those parties. *See First National Bank of Arizona v. Cities Service Company,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). This inquiry implicates the substantive evidentiary standard of proof that would apply at a trial on the merits which, in this case, is a preponderance of the evidence.

The court must now apply these procedural standards, as well as the substantive law developed under the First and Fourteenth Amendments to the undisputed facts of this case.

## II. *MOOTNESS*

■ As a threshold matter, the Defendants argue that the claims involving the November 25, 2000, parade ordinance are moot because that ordinance was replaced by the parade ordinance enacted on May 14, 2001. The Plaintiffs contend that James Long's claim for nominal damages is not moot because the November 25, 2000, ordinance was unconstitutional and was actually applied to him.

■ A claim must be dismissed as moot "if an event occurs [pending review] that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895). That principle applies to challenges to legislation that has expired or has been repealed, where the plaintiff has sought only prospective relief. If the challenged statute no longer exists, there ordinarily can be no real controversy as to its continuing validity, and an order enjoining its enforcement would be meaningless. In such circumstances, it is well settled that the case should be dismissed as moot. *See, e.g., Board of Flour Inspectors for Port of New Orleans v. Glover,* 160 U.S. 170, 16 S.Ct. 321, 40 L.Ed. 382 (1895) (repeal). Accord, *Burke v. Barnes,* 479 U.S. 361, 363–365, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987) (expiration). A case is moot even when a challenged statute is

replaced with new legislation that, while not obviously or completely remedying the alleged infirmity in the original act, is more narrowly drawn. The new law ultimately may suffer from the same legal defect as the old, but the statute may be sufficiently altered so as to present a substantially different controversy. *See, e.g., Diffenderfer v. Central Baptist Church of Miami, Fla., Inc.,* 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972) (per curiam).

Under these principles, the court concludes that any claims for prospective injunctive and declaratory relief based on the November 25, 2000, City of Lake Geneva ordinance are moot and will be dismissed. However, Plaintiff Long is seeking nominal damages because he contends that Ordinance No. 00–14 is unconstitutional and was applied to curtail his speech on a matter of public interest. His claim for nominal damages arising out of this incident is not moot and will not be dismissed. *See Richmond v. J.A. Croson Co.,* 488 U.S. 469, 478, n. 1, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) (expiration of set-aside law did not moot case where parties had continuing controversy over question whether prior application or ordinance entitled plaintiff to damages).

### III. *QUALIFIED IMMUNITY*

As a second threshold matter, the Defendants argue that this action should be dismissed because they are entitled to qualified immunity. The Defendants are a municipality, and its mayor who is being sued in his official capacity.

Qualified immunity is an affirmative defense which can only be raised by a natural person sued in his individual capacity. The defense cannot be raised by a city. *See Tenenbaum v. Williams,* 193 F.3d 581, 596 (2nd Cir.1999) *cert. denied sub nom. City of New York v. Tenenbaum,* 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000). Likewise, "[i]t is well

established that the qualified immunity doctrine does not apply to official capacity claims." *Sanville v. McCaughtry,* 266 F.3d 724, 732 (7th Cir.2001), quoting *Ruffino v. Sheahan,* 218 F.3d 697, 700 (7th Cir.2000). Therefore, the City and Mayor in his official capacity are not entitled to qualified immunity from suit and the court will not dismiss on that basis.

### IV. *ORDINANCE NO. 00–14*
#### A. FACTS

On November 16, 2000, the Common Council for the City of Lake Geneva had enacted a parade and public assembly ordinance (Ordinance No. 00–14). Ordinance No. 00–14 provided that:

*Section I.* Chapter 53 Parades and Public Assemblies of the City of Lake Geneva Zoning Ordinance is created to read as follows:

Article I.

Section 53–1 Definitions.

*Parade* means any march, demonstration, procession, exhibition, or motorcade consisting of people, animals or vehicles, or a combination thereof in or upon any public streets, sidewalks, alley, park, parkway or other public grounds within the City with an intent of attracting public attention that may interfere with the normal flow or regulation of traffic upon the public streets, sidewalks, alley, park, parkway or other public grounds.

*Public Assembly* means any demonstration, protest, picket line, rally or gathering regardless of whether one or more are involved for a common purpose as a result of prior planning that may interfere with the normal flow or regulation of pedestrian or vehicular traffic or occupies any public area in a public place open to the general public.

Section 53 2 Permit Required.

No person shall engage in, participate in, aid, form or conduct any parade or public assembly unless a permit is issued by the City Clerk, which shall be issued only after investigation and recommendation of the Chief of Police.

Section 53 3 Exceptions.

This ordinance shall not apply to the following:

a) funeral processions;

b) school sponsored and supervised activities;

c) governmental agencies;

d) Veterans Organizations, Armistice Day and Memorial Day observances;

e) striking union picket lines;

f) spontaneous events occasioned by news or affairs coming into public knowledge within three days of such public assembly, provided that the organizer thereof gives written notice to the City 24 hours prior to such parade or public assembly.

Section 53 4 Application for Permit.

a) A person seeking a parade or public assembly permit shall file an application with the City Clerk on forms provided and the application shall be signed by the applicant under oath. All applications shall be promptly forward [sic] to the Chief of Police for investigation. If the parade or public assembly permit is granted, the City Clerk shall issue the permit forthwith.

b) An application for a parade or public assembly permit shall be filed with the City Clerk at least thirty (30) days in advance of the date of the proposed parade or public assembly, the Chief of Police or City Administrator may waive the time limit of any proposed parade or public assembly if after due consideration of the date, time, place and nature of the parade or public assembly, the anticipated number of participants, and the City services required in connection with the event, the Chief of Police recommends to the City Clerk that the waiver will not diminish public safety.

c) The application for a parade or public assembly permit shall set for the following information:

1) The name, address and telephone number of the person seeking to conduct such parade or public assembly;

2) If the parade or public assembly is proposed to be conducted by an organization, the name, address and telephone number of the headquarters of the organization, and the authorized and responsible heads of the organization;

3) The name, address and telephone number of the person who will be in charge (chairperson) of the parade or public assembly;

4) The required date of the parade or public assembly;

5) The requested route to be traveled, including the starting point and the termination point;

6) The approximate number of persons who, and animals and vehicles which will constitute such parade or public assembly and the type of animals and description of the vehicles;

7) The proposed hours when such parade or public assembly will start and terminate;

8) A statement as to whether the parade or public assembly will occupy all or only a portion of the width of the streets proposed to be traversed;

9) The location by street(s) of any assembly areas for the parade or public assembly;

10) The time at which units of the parade or public assembly will begin to assemble at any such assembly area or areas;

11) The interval of space to be maintained between the units of such parade or public assembly;

12) If the parade or public assembly is designated to be held by, or on behalf of, any person or agent other than the applicant, the applicant for such permit shall attach to the application a letter from the principal or person authorizing the applicant to apply for the permit on the principal's or person's behalf;

13) The type of parade or public assembly, including a description of activities planned during the event;

14) A description of any recording equipment, sound amplification equipment, banners, signs or other attention-getting devices to be used in connection with the parade or public assembly;

15) The approximate number of participants (spectators by definition are not participants);

16) The anticipated approximate number of spectators;

17) A designation of any public facilities or equipment to be utilized;

18) Any additional information that the City Clerk finds reasonably necessary to a fair determination as to whether a permit should be issued;

Section 53 5 Fees.

The Common Council may establish a non-refundable fee by resolution to cover administrative costs of processing the permit which shall be paid by the applicant when the application is filed. If the application is for the use of any City property or for any City services, the applicant shall pay prior to the issuance of a permit any required charges in accordance with a schedule of service costs approved by the Common Council by resolution.

Section 53 6 Standards for Issuance.

a) The Chief of Police shall recommend the City Clerk to issue a permit as provided for herein when, from a consideration of the application and from such other information as may otherwise be obtained, he/she finds that:

1) The conduct of the parade or public assembly will not substantially interrupt the safe and orderly movement of other pedestrians or vehicular traffic contiguous to its route or location;

2) The conduct of the parade or public assembly will not require the diversion of so great a number of City police officers to properly police the line of movement and the areas contiguous as to prevent normal police protection of the City;

3) The concentration of persons, animals, vehicles at public assembly points of the parade or public assembly will not unduly interfere with proper fire and police protection of, or ambulance service to, areas contiguous to such public assembly areas;

4) The conduct of the parade or public assembly will not prevent or interfere with the operation of any public service within the City which may be necessary to provide while the parade or public assembly is in progress;

5) The conduct of the parade or public assembly is not reasonably likely to cause injury to persons or

property, to provoke disorderly conduct, or create a disturbance;

6) The parade or public assembly is scheduled to move from its point of origin to its point of termination expeditiously and without unreasonable delays in route;

7) Adequate sanitation and other required health facilities are or will be made available in or adjacent to any public assembly areas;

8) There are sufficient parking placed [sic] near the site of the parade or public assembly to accommodate the number of vehicles reasonably expected;

9) The parade or public assembly is not for the primary purpose of advertising any product, goods, or event that is primarily for profit. The prohibition against advertising any product, goods or event shall not apply to signs identifying organization or sponsors furnishing or sponsoring exhibits or structures used in the parade;

10) No parade or public assembly permit application for the same time and location is already granted or has been received and will be granted, or if a permit application for the same time, but different location is already granted or has been received and will be granted, and the police resources' required for that prior parade or public assembly are so great that in combination with the subsequent proposed application, the resulting deployment of police services would have an immediate and adverse effect upon the welfare and safety of persons and property; and

11) No other event is scheduled elsewhere in the City where the police resources required for that event are so great that the deployment of police services for the proposed parade or public assembly would have an immediate and adverse effect upon the welfare and safety of persons and property;

b) No permit shall be granted that allows for the erection or placement of any structure, whether permanent or temporary, on a City street, sidewalk, or right-of-way, unless advance approval for the erection or placement of the structure is obtained from the Common Council.

Section 53–7 Notice of Denial of Application

The Chief of Police shall act promptly to investigate and issue a recommendation upon a timely filed application for a parade or public assembly permit. In no event shall the City Clerk grant or deny a permit less than fifteen (15) days prior to the event. If the Chief of Police recommends denial, then the City Clerk shall disapprove the application. The City Clerk shall notify the applicant either by personal delivery or certified mail at least fifteen (15) days prior to the event of his/her action and state the reasons for the denial.

Section 53 8 Appeal Procedure.

Any applicant shall have the right to appeal the denial of a parade or public assembly permit to the City Council. The denied applicant shall make the appeal within five (5) days after receipt of the denial by filing a written notice with the City Clerk and sending a copy of the notice to the Chief of Police. The City Council shall act upon the appeal at the next scheduled meeting following receipt of the notice of appeal.

Section 53 9 Notice to City and Other Officials.

Immediately upon the issuance of a parade or public assembly permit, the City Clerk shall send a copy thereof to the following:

a) The Mayor
b) Chief of Police
c) The City Attorney
d) The Fire Chief; and
e) The official newspaper

Section 53–10 Contents of Permit.

Each parade or public assembly permit shall state the following information.

a) starting and ending times;

b) minimum and maximum speed of parade units;

c) maximum interval of space to be maintained between parade units;

d) the portions of the streets that may be occupied by the parade or public assembly;

e) the maximum length of the parade or public assembly in miles or fractions thereof; and

f) such other information as the Chief of Police and/or the City Clerk shall find necessary to the enforcement of this Ordinance.

Section 53 11 Duties of Permittee.

a) A permittee hereunder shall comply with all permit directions and conditions and with all applicable laws and ordinances. The parade or public assembly chairperson shall carry the parade or public assembly permit upon his/her person during the conduct of the parade or public assembly, and shall produce it forthwith upon the request of any City, County or State Police Officer.

Section 53 12 Revocation of Permit.

The Chief of Police and/or City Clerk shall have the authority to revoke a parade or public assembly permit instantly upon violation of the conditions or standards for issuance as set forth in this Ordinance or, when a public emergency arises where the police resources required for that emergency are so great that deployment of police services for the parade or public assembly would have an immediate and adverse effect upon the welfare and safety of persons or property.

Section 53 13 Prohibitions

The following prohibitions shall apply to all parades and public assemblies:

a) It shall be unlawful for any person to stage, present, or conduct any parade or public assembly without first having obtained a permit as herein provided;

b) It shall be unlawful for any person to participate in a parade or public assembly for which the person knows a permit has not been granted;

c) It shall be unlawful for any person in charge of, or responsible for the conduct of, a duly licensed parade or public assembly to knowingly fail to comply with any condition of the permit;

d) It shall be unlawful for any person to engage in any parade or public assembly activity that would constitute a substantial hazard to the public safety or that would materially interfere with or endanger the public peace or rights of residents to the quiet and peaceful enjoyment of their property.

Section 53 14 Public Conduct During Parades or Public Assemblies.

a) No person shall unreasonably hamper, obstruct or impede, or interfere with any parade or public assembly or with any person, vehicle or animal participating or used in a parade or public assembly.

b) No driver of a vehicle shall drive between the vehicles or persons comprising a parade or public assembly when such vehicles or persons are in motion and are conspicuously designated as a parade or public assembly. The Chief of Police shall have the authority, when reasonable necessary, to prohibit or restrict the parking of vehicles along a street constituting a part of the route of a parade or public assembly. The Chief of Police shall post signs to that effect, and it shall be unlawful for any persons to park or leave unattended any vehicle in violation thereof.

Section 53 0 15 Penalties.

Any person violating the provisions of any section of this Ordinance shall, upon conviction, be punished by a fine not less than Five Hundred and 00/100 Dollars ($500.00) for each violation, together with the costs of prosecution. In the event the defendant defaults on payment thereof, the defendant's operating privileges shall be suspended pursuant to Sections 343.30 and 345.47 of the Wisconsin Statutes, or by imprisonment in the Walworth County Jail until such forfeiture and costs are paid, but not in excess of the number of days set forth in Section 800.095(4) of the Wisconsin Statutes. Each day's violation shall constitute a separate offense.

Section 53 16 Severability

If any section, subsection, sentence, clause or phrase of this Ordinance is for any reason held invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance.

Section II. This Ordinance shall take effect and be in force after its passage and publication.

On November 25, 2000, Plaintiff Long was standing in a public right of way in front of a Planned Parenthood clinic in the City of Lake Geneva demonstrating against abortion. Lake Geneva Police Sergeant Fritz was dispatched to investigate a complaint against the demonstration. Because Long appeared to be in charge of the demonstrators, Sergeant Fritz gave him a copy of Ordinance No. 00–14. Fritz ascertained that Long did not have a permit and ordered him to cease and desist. Long obeyed the order and left the area. He did not apply for a permit at that time.

Plaintiff Long now contends that Ordinance No. 00–14 infringed on his First Amendment rights to free speech and assembly as it was applied to him and that, therefore, he is entitled to nominal damages.[2] He argues that Ordinance No. 00–14 was a content-based restriction on speech because it exempted "striking union picket lines" (along with limited exceptions for school supervised and sponsored activities, veterans' organizations, and governmental agencies) from the permit requirement, which it required persons such as himself who were not part of a striking union picket line to obtain a permit. The Plaintiffs contend that the exceptions also violated the Equal Protection Clause.

### B. STANDING

▇▇▇ Long did not apply for a permit to picket on November 25, 2000, and he was not arrested or subjected to prosecution, so the question arises as to whether

**2.** Defendant Trewhella also challenges Ordinance No. 00–14. He says that when he heard that Long was "threatened" with arrest, he was deterred from protesting in the City of Lake Geneva, but he is not seeking any form of relief for the alleged violation of his rights by enforcement of Ordinance No. 00–14.

he has standing to sue for nominal damages for the alleged violations of his rights under the First Amendment and the Equal Protection Clause. Article III of the Constitution limits the exercise of federal judicial power to actual cases and controversies. *See, e.g., Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Litigants are required to demonstrate a "personal stake in the outcome" of a case to guarantee the "concrete adverseness which sharpens the presentation of issues" necessary for proper resolution of constitutional questions. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). To comply with Article III, a plaintiff must show: (1) a distinct and palpable injury, (2) a causal connection between the injury and the defendant's conduct, and (3) a substantial likelihood that the relief requested will redress the injury. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

Recently, the Seventh Circuit explained that:

> A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him. *Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 392, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *Sequoia Books, Inc. v. Ingemunson,* 901 F.2d 630, 633–34 (7th Cir.1990); *American Booksellers Ass'n, Inc. v. Hudnut,* 771 F.2d 323, 327 (7th Cir.1985), *aff'd without opinion,* 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986); the threat is latent in the existence of the statute. Not if it clearly fails to cover his conduct, of course. But if it arguably covers it, and so may deter constitutionally protected expression because most people are frightened of violating criminal statutes especially when the gains are slight, as they would

be for people seeking only to make a political point and not themselves political operatives, there is standing. *See Virginia v. American Booksellers Ass'n, Inc., supra,* 484 U.S. at 392–93, 108 S.Ct. 636, 98 L.Ed.2d 782; *Hoover v. Wagner,* 47 F.3d 845, 847 (7th Cir.1995).

*Majors v. Abell,* 317 F.3d 719, 721 (7th Cir.2003).

■ The United States Supreme Court has held that actual chilling of a plaintiff's exercise of his free speech rights constitutes a First Amendment injury. *See generally New York Times v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). In this case, Long has alleged that his right to speak on a matter of public interest was chilled. Therefore, he has suffered an injury and has standing to seek nominal damages.

Similar concerns govern standing under the Equal Protection Clause. The injury in fact in an equal protection case is the denial of equal treatment resulting from the government's imposition of a barrier that makes it more difficult for members of one group to obtain a benefit than it is for the members of another group. *See Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). In this case, Long argues that labor union picketers were exempt from the permit requirement while he was warned not to picket without a permit. These facts give Long standing to prosecute his equal protection claim.

## C. DISCUSSION AND DECISION

### 1. Appropriate Level of Scrutiny

■ The Plaintiffs argue that Lake Geneva's Ordinance No. 00–14 was unconstitutional as applied to Long because, while it required him to obtain a permit in order

to protest abortion, it did not require labor union picketers as well as school groups, veterans' organizations, and government agencies to obtain permits before engaging in speech on issues of public interest. The Plaintiffs believe that, because some groups were treated more favorably under the Ordinance, Ordinance No. 00–14 is a content-based restriction on speech which evinces hostility toward their anti-abortion message. The United States Supreme Court has held that a restriction on speech is content-based when the message conveyed determines whether the speech is subject to the restriction. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 428, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993).

 The threshold inquiry for evaluating the constitutionality of a restriction upon speech, such as the ordinance at issue here, is to determine whether the challenged ordinance is content-based or content-neutral, and then, based upon the answer to that question, to apply the proper level of scrutiny. *See City of Ladue v. Gilleo*, 512 U.S. 43, 58, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (O'Connor, J., concurring). In this case, the facts show that the Ordinance provision exempting some groups from the parade and assembly permit requirement treated some groups more favorably than others. Therefore, the court concludes that the requirements of Ordinance No. 00–14 are content-based. *See generally Metromedia v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).

 Content-based regulations are subject to strict scrutiny. *See Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). For a government to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *See Id.* at 45, 103 S.Ct. 948.

### 2. Constitutionality of Ordinance No. 00–14

 It is undisputed that Ordinance No. 00–14 excepted labor union picketers, school groups, veterans' organizations and government agencies from the permit requirement, but that the permit requirement was applied to keep Plaintiff Long from picketing the Planned Parenthood clinic in Lake Geneva on November 25, 2000. When a governmental regulation discriminates against speech-related activities in a public forum, the First Amendment and Equal Protection Clause mandate that the legislation be finely tailored to serve substantial governmental interests, and the justifications offered for any distinctions it draws must be carefully scrutinized. *See Carey v. Brown*, 447 U.S. 455, 461, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Police Department of Chicago v. Mosley*, 408 U.S. 92, 98–99, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

In this case, the Defendants have offered no justification for favoring some types of speech over others in Ordinance No. 00–14.[3] Therefore, the court concludes that the ordinance is unconstitutional as applied to require James Long to obtain a permit before demonstrating in Lake Geneva on November 25, 2000.

 Long seeks nominal damages for the Defendants' violation of his consti-

---

**3.** In *Frisby v. Schultz*, 487 U.S. 474, 481–82, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), the United States Supreme Court mentioned that Section 103.53(1) (1985–1986) of the Wisconsin Statutes protects peaceful labor picketing, but the Court indicated that this protection might run afoul of federal law in the face of a free speech or equal protection challenge to a speech regulating law incorporating the special protection.

tutional rights on November 25, 2000. Nominal damages may be available in a section 1983 case if a plaintiff was deprived of an absolute right yet did not suffer an actual injury. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The loss of First Amendment freedoms, for even minimal periods of time, constitutes an injury. *See Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *New York Times Company v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). Consequently, because the Defendants, acting pursuant to an unconstitutional ordinance, denied Long his right to speak on a matter of public interest, Long is entitled to nominal damages of one dollar ($1.00).

## V. *RETALIATION*

■■■ The Plaintiffs allege that the Defendants filed counterclaims against them in this action seeking injunctive relief requiring Long and the demonstrators to comply with the municipal ordinances and prohibiting them from distributing graphic photographs of aborted fetuses. Both Plaintiffs seek compensatory damages for this claimed violation of their rights.

The Defendants offered to dismiss the counterclaims voluntarily, but the Plaintiffs objected. Nevertheless, the court dismissed the counterclaims without prejudice and without costs in its Order of February 4, 2003. In that Order the court found that the Plaintiffs had not made a showing of what their alleged damages are. Likewise, they have made no such showing in response to the Defendants' summary judgment motion. Therefore, the court will not grant relief on this claim.

## VI. *ORDINANCE NO. 01–22*

After seeing a newspaper article explaining a new Seventh Circuit First Amendment case,[4] the City Attorney for Lake Geneva urged the City to replace Ordinance No. 00–14. *See* Affidavit of Michael J. Rielly in Opposition to Plaintiffs' Motion for Summary Judgment (partial) (filed November 15, 2002) at ¶ 5. On May 14, 2001, the City enacted Ordinance No. 01–22 to replace Ordinance No. 00–14 and to regulate parades and public assemblies. Ordinance No. 01–22 provides that:

The Common Council of the City of Lake Geneva does hereby ordain as follows:

*Section I.* Chapter 53 Parades and Public Assemblies of the City of Lake Geneva Zoning Ordinance is repealed and recreated to read as follows:

Article I.

Section 53–1 Definitions.

*Parade* means any march, procession, exhibition, or a combination thereof, on any public streets, sidewalks, alley, park, parkway or other public grounds within the City which does not comply with normal and usual traffic regulations and controls.

*Public Assembly* means a company of persons which is reasonable anticipated to obstruct the normal flow of traffic upon the public way and that is collected together in one place.

*"Business Days"* means those days in which municipal offices are open for conducting City business and does not include Saturdays, Sundays or official holidays.

Section 53–2 Permit Required.

No person shall engage in, participate in, aid, form or conduct any parade or

---

**4.** *See MacDonald v. City of Chicago*, 243 F.3d 1021 (7th Cir.2001), *cert. denied*, 534 U.S. 1113, 122 S.Ct. 919, 151 L.Ed.2d 884 (2002).

public assembly unless a permit is issued by the City Clerk, which shall be issued only after investigation and recommendation of the Chief of Police.

Section 53–3 Exceptions.

This ordinance shall not apply to the following:

a) funeral processions;

b) school sponsored and supervised activities;

c) governmental agencies;

d) Veterans Organization's Armistice Day and Memorial Day observances;

e) union picket lines;

f) spontaneous events occasioned by news or affairs coming into public knowledge within three days of such public assembly, provided that the organizer thereof gives written notice to the City 24 hours prior to such parade or public assembly.

Section 53–4 Application for Permit.

a) A person seeking a parade or public assembly permit shall file an application with the City Clerk on forms provided and the application shall be signed by the applicant under oath. All applications shall be promptly forwarded to the Chief of Police for investigation. If the parade or public assembly permit is granted, the City Clerk shall issue the permit forthwith.

b) An application for a parade or public assembly permit shall be filed with the City Clerk at least seven (7) business days in advance of the date of the proposed parade or public assembly, the Chief of Police or City Mayor may waive the time limit of any proposed parade or public assembly if after due consideration of the date, time and place of the parade or public assembly, the anticipated number of participants, and the City services required in connection with the event, the Chief of Police recommends to the City Clerk that the waiver will not diminish public safety.

c) The application for a parade or public assembly permit shall set forth the following information:

1) The name, address and daytime telephone number, pager/cell phone number if applicable, and facsimile number of the person seeking to conduct such parade or public assembly;

2) If the parade or public assembly is proposed to be conducted by an organization, the name, address and daytime telephone number of the headquarters of the organization, and the authorized and responsible heads of the organizations;

3) The name, address and daytime telephone number of the person who will be in charge (chairperson) of the parade or public assembly;

4) The requested date of the parade or public assembly and the hours that it will commence and terminate;

5) The requested route to be traveled, including the starting point and the termination point;

6) The approximate number of persons who, and animals and vehicles which will constitute such parade or public assembly and the type of animals and description of the vehicles and the basis on which this estimate is made.

Section 53–5 Fees.

The Common Council may establish a non-refundable fee by resolution to cover administrative costs of processing the permit which shall be paid by the applicant when the application is

filed. If the application is for the use of any City property or for any City services, the applicant shall pay prior to the issuance of a permit any required charges in accordance with a schedule of service costs approved by the Common Council by resolution.

Section 53–6 Investigation prior to Issuance.

a) The Chief of Police shall investigate the facts set out in the application and shall recommend to the City Clerk to issue a permit when he/she finds that:

1) The conduct of the parade or public assembly will not substantially interrupt the safe and orderly movement of other pedestrians or vehicular traffic contiguous to its route or location;

2) The conduct of the parade or public assembly will not require the diversion of so great a number of City police officers to properly police the line of movement and the areas contiguous as to prevent normal police protection of the City;

3) The concentration of persons, animals, vehicles at public assembly points of the parade or public assembly will not unduly interfere with proper fire and police protection of, or ambulance service to, areas contiguous to such public assembly areas;

4) The conduct of the parade or public assembly will not prevent or interfere with the operation of any public service within the City which may be necessary to provide while the parade or public assembly is in progress;

5) The event is not being conducted for an unlawful purpose;

6) The parade or public assembly is scheduled to move from its point or origin to its point of termination expeditiously and without unreasonable delays in route;

7) Adequate sanitation and other required health facilities are or will be made available in or adjacent to any public assembly areas;

8) There are sufficient parking placed [sic] near the site of the parade or public assembly to accommodate the number of vehicles reasonably expected;

9) The proposed activity will not interfere with the use of the requested area by another party to whom a valid permit has been issued for the same area or route;

10) No other event is scheduled elsewhere in the City where the police resources for that event are so great that the deployment of police services for the proposed parade or public assembly would have an immediate and adverse effect upon the welfare and safety of persons and property;

11) The application contains sufficient information about the proposed route and crowd estimate to enable the police chief to evaluate the proposed event under this section.

b) In investigating the application, the Chief of Police may recommend the conduct of a parade or public assembly on a date, at time, at a location, or over a route different from that named by the applicant. This alternate permit shall to extent practicable authorize an event that will have comparable public visibility and a similar route, location and date to that of the proposed event. An applicant desiring to accept an alternative parade or public assembly permit shall within two (2) business days after notice of the Chief

of Police's alternative recommendation, file a written notice of acceptance with the City Clerk. An alternative parade or public assembly permit shall conform to the requirements and shall have the effect of a parade or public assembly permit.

c) The Chief of Police is empowered to limit the parade and public assembly to the sidewalk or to one or more traffic lanes of the street where it is determined that such limited area is capable of accommodating the number of people anticipated based upon the information submitted by the applicant and the experience of previous comparable events. In the event that the number of persons in attendance exceed anticipated levels, members of the Police Department are authorized to make reasonable accommodation to increase the portion of the public way made available in order to preserve public health and safety.

d) If the Chief of Police denies an application for failure to provide sufficient information about the proposed route or crowd estimate, he shall specify what additional information must be provided in a new or amended application.

Section 53–7 Notice of Denial of Application.

The Chief of Police shall act promptly to investigate and issue a recommendation within two (2) business days after the filing of the application for a parade or public assembly permit. If the Chief of Police recommends denial, then the City Clerk shall disapprove the application. The City Clerk shall notify the applicant by facsimile transmission or telephonically and mail directed to the applicant within two (2) business days after the Chief of Police denial, along with a notice stating the Chief of Police's facts and conclusions which are the basis for his/her denial of the permit.

Section 53–8 Appeal Procedure.

Any applicant shall have the right to appeal the denial of a parade or public assembly permit to the Finance/License & Judicial Committee and City Council. A hearing before the Finance/License & Judicial Committee shall be held within three (3) business days after the filing of appeal and based upon the evidence contained in the record, the Committee shall recommend that the City Council either affirm or reverse the decision of the Chief of Police. This City Council determination shall be subject to judicial review in accordance with the laws of the State of Wisconsin.

Section 53–9 Notice to City and Other Officials.

Immediately upon the issuance of a parade or public assembly permit, the City Clerk shall send a copy thereof to the following.

a) The Mayor

b) Chief of Police

c) The City Attorney

d) The Fire Chief; and

e) Alderman of the ward in which the parade or public assembly is to be held

d) The official newspaper

Section 53–10 Contents of Permit.

Each parade or public assembly permit shall state the following information.

a) starting and ending times;

b) the portions of the streets that may be occupied by the parade or public assembly;

c) the maximum length of the parade or public assembly in miles or fractions thereof.

Section 53–11 Duties of Permittee.

a) A permittee hereunder shall comply with all permit directions and conditions and with all applicable laws and ordinances. The parade or public assembly chairperson shall carry the parade or public assembly permit upon his/her person during the conduct of the parade or public assembly.

Section 53–12 Revocation of Permit.

The Chief of Police and/or City Clerk shall have the authority to revoke a parade or public assembly permit instantly upon violation of the conditions or standards for issuance as set forth in this Ordinance or, when a public emergency arises where the police resources required for that emergency are so great that deployment of police services for the parade or public assembly would have an immediate and adverse effect upon the welfare and safety of persons or property.

Section 53–13 Public Conduct During Parades or Public Assemblies.

a) It shall be unlawful for any person to stage, present, or conduct any parade or public assembly without first having obtained a permit as herein provided;

b) Any person who knowingly interferes with any other person or organizations lawfully conducting a parade or public assembly, or any person violating any of the provisions of this ordinance, shall be subject to the penalties in Section 53–14.

c) No person shall unreasonably hamper, obstruct or interfere with any parade or public assembly or with any person, vehicle or animal participating or used in a parade or public assembly;

d) No driver of a vehicle shall drive between the vehicles or persons comprising a parade or public assembly when such vehicles or persons are in motion and are conspicuously designated as a parade or public assembly. The Chief of Police shall have the authority, when reasonable [sic] necessary, to prohibit or restrict the parking of vehicles along a street constituting a part of the route of a parade or public assembly. The Chief of Police shall post signs to that effect, and it shall be unlawful for any persons to park or leave unattended any vehicle in violation thereof.

Section 53–15 Penalties.

Any person violating the provisions of any section of this Ordinance shall, upon conviction, be punished by a fine of not more than Five Hundred and 00/100 Dollars ($500.00) for each violation, together with the costs of prosecution. In the event the defendant defaults on payment thereof, the defendant's operating privileges shall be suspended pursuant to Sections 343.30 and 345.47 of the Wisconsin Statutes, or by imprisonment in the Walworth County Jail until such forfeiture and costs are paid, but not in excess of the number of days set forth in Section 800.095(4) of the Wisconsin Statutes. Each day's violation shall constitute a separate offense.

Section 53–16 Severability.

If any section, subsection, sentence, clause or phrase of this Ordinance is for any reason held invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance.

On May 18, 2002, Plaintiffs Trewhella and Long, together with 40–50 other people, assembled in the public areas of Lake Geneva to protest abortions. Lake Gene-

va's police chief told them that they would be arrested if they continued the protest because this was not a "spontaneous event" and they did not have a permit. *See* Plaintiffs' Supplemental Tendering of Material Facts at Exhibit 13 (Deposition of Matthew Trewhella). The Plaintiffs then departed.

### A. DISCUSSION AND DECISION

■■■ The Plaintiffs are challenging Lake Geneva's Ordinance No. 01–22 as applied to them on May 18, 2002, and on its face. Plaintiff Long objects to any requirement that he obtain a permit before he stages a protest. However, the United States Supreme Court has long held that the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternate channels for communication of the protected speech. *See Thomas v. Chicago Park District,* 534 U.S. 316, 320, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002); *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). An Ordinance requiring an advance parade permit is a traditional exercise of control by a local government. *See Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

In addition to Long's general objection, the Plaintiffs argue that Ordinance No. 01–22 is unconstitutional because:

1. the Ordinance exempts some groups from its regulations on the basis of the content of their speech, *see* City of Lake Geneva Ordinance No. 01–22 at § 53–3;

2. the Ordinance terms "parade" and "assembly" are vague or overly broad, *see* City of Lake Geneva Ordinance No. 01–22 at § 53–1;

3. the Ordinance does not leave ample alternate means of communicating a message;

4. the Ordinance term "delays in route" is vague and overly broad, *see* City of Lake Geneva Ordinance No. 01–22 at § 53–6(a)6;

5. the Ordinance fee schedule is unconstitutional, *see* City of Lake Geneva Ordinance No. 01–22 at § 53–5.

■■■ The objection to the exceptions listed in Section 53–3 is content-based, so Section 53–3 must be subjected to strict scrutiny. *See* Section IV(C)(1), *supra.* The remainder of the objections are to sections which are content-neutral. Content-neutral regulations are subject to intermediate scrutiny under which time, place or manner restrictions must be reasonable. *See Schultz v. City of Cumberland,* 228 F.3d 831, 840 (7th Cir.2000).

Ordinance No. 01–22 provides that any section, subsection, sentence, clause or phrase found by a court to be invalid or unconstitutional does not affect the validity of the remaining portions of the Ordinance, so, if this court concludes that any portion of the Ordinance is unconstitutional, it will be severable.

#### 1. Exceptions

The court has already ruled that Lake Geneva's Ordinance No. 00–14 was unconstitutional because it excepted labor union picketers and other groups from the permit requirement. *See* Section IV(A)(2), *supra.* Ordinance No. 01–22 incorporates this same provision in Section 53–3, so, for the same reasons explained in Section IV(C)(2) above, the court concludes that Ordinance No. 01–22 is unconstitutional as applied on its face. As a result, the constitutional rights of Plaintiffs Trewhella and Long were violated by the Defendants on May 18, 2002, when the Plaintiffs were preparing to stage a protest. On that date

the Plaintiffs were threatened with arrest by Lake Geneva's police chief who was acting pursuant to the unconstitutional Ordinance No. 01–22. Consequently, the court will award One Dollar ($1.00) in nominal damages to each Plaintiff for this violation.

### 2. "Parade," "Assembly"

■ Next, the Plaintiffs complain that the terms "parade" and "assembly" are vague or overly broad as to the size of a group subject to the Ordinance. Ordinance Nol 01–22, at § 53–1, indicates that a "parade" could consist of only one person, while an "assembly" could be any group larger than a single person. The City has provided no elucidation of the terms and its designated witness (City Clerk Colleen Alexander) did not know how to interpret the terms. *See* Plaintiffs' Supplemental Tendering of Material Fact at Exhibit 18 (Deposition of Colleen Alexander).

This Ordinance mandates a fine or jail sentence for a violation. It does not give potential violators, such as a group of two, fair notice of whether they are subject to the assembly permit requirement. Moreover, the Defendants have offered no reason for defining a single person as a "parade." Therefore, the court concludes that these undefined terms are unreasonable and unconstitutional. *See BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

### 3. Alternate Means of Communication, Fee Schedule, Delays

The Plaintiffs say that the Ordinance does not allow for alternative means of communicating their message. However, they have not developed the facts or legal authority underpinning their position. For example, they have not established that the area in which they tried to stage their protest was unique or vital to their message. The court does not view the Ordinance as limiting alternate means of communication. Therefore, it will not rule that the Ordinance is unconstitutional on this ground.

The Plaintiffs' objection to the fee schedule provision in Section 53–5 is similarly undeveloped, so the court will not strike down fees as unconstitutional *per se.*

■ Finally, the Plaintiffs maintain that Section 56–6(a)6 of Ordinance No. 01–22 allows the Defendants unfettered power to deny a permit unless they find that:

> The parade or public assembly is scheduled to move from its point of origin to its point of termination expeditiously and without unreasonable delays in route;

The Plaintiffs argue that the term "delays in route" is vague or overly broad. The Fourth Circuit has recently noted that:

> ... facial invalidation of a law for overbreadth is "strong medicine," *Broadrick v. Oklahoma,* 413 U.S. 601, 613–14, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), and is generally disfavored unless the law promotes a licensing scheme giving unbridled discretion to the decisionmaker. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (plurality opinion) (O'Connor, J.) & 261 (Scalia, J., concurring in part and dissenting in part).

*Reyes v. City of Lynchburg,* 300 F.3d 449, 453 n. 5 (4th Cir.2002).

The court does not find that Subsection 56–6(a)(6) of the Lake Geneva Ordinance gives unbridled discretion to the Chief of Police when deciding whether to issue a parade or assembly permit. The term "delays in route" is modified by the adjective "unreasonable" which limits the Chief's discretion. Therefore, the court will not invalidate Subsection 56–6(a)(6) on this ground.

## ORDER

For the reasons explained above, the court ORDERS that the "City of Lake Geneva's and Mayor Charlie Rude's Motion Pursuant to F.R.C.P. 56" (filed October 15, 2002) IS GRANTED IN PART AND DENIED IN PART in conformity with the discussion above. Summary judgment is granted, in favor of the Defendants on the Plaintiffs' claims for compensatory damages for the filing of counterclaims and on all claims for declaratory or injunctive relief arising out of the application of the Defendants' Ordinance No. 00–14.

IT IS FURTHER ORDERED that the Plaintiffs' request for summary judgment (filed October 16, 2002) IS GRANTED IN PART AND DENIED IN PART.

The court declares that Section 53–3 of the City of Lake Geneva's Ordinance No. 00–14 (repealed) is unconstitutional and that Sections 53–3 and 53–1 of the City of Lake Geneva's Ordinance No. 01–22 are unconstitutional.

Ordinance No. 00–14 was unconstitutional as applied to Plaintiff James Long on November 25, 2000, and Plaintiff Long is awarded nominal damages of One Dollar ($1.00).

Ordinance No. 01–22 was unconstitutional as applied to Plaintiffs Matthew Trewhella and James Long on May 18, 2002 and Plaintiffs Trewhella and Long are each awarded nominal damages of One Dollar ($1.00).

The Plaintiffs request for summary judgment is denied on all other claims.

IT IS FURTHER ORDERED that this action is dismissed upon its merits and with prejudice.

IT IS FURTHER ORDERED that the Clerk of Court shall enter a final judgment as a separate document. See Federal Rule of Civil Procedure 58. This judgment shall provide that:

This action came on for hearing before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the issues having been heard and a decision having been rendered,

IT IS ORDERED AND ADJUDGED

that Plaintiff James Long recover of the Defendants City of Lake Geneva and Mayor Charlie Rude the sum of One Dollar ($1.00), based on the application of the City of Lake Geneva Ordinance No. 00–14, and the sum of One Dollar ($1.00), based upon the application of City of Lake Geneva Ordinance No. 01–22, together with interest thereon at the rate provided by law and his costs of this action.

IT IS FURTHER ORDERED AND ADJUDGED

that Plaintiff Matthew Trewhella recover of Defendants City of Lake Geneva and Mayor Charlie Rude the sum of One Dollar ($1.00) based upon the application of the City of Lake Geneva Ordinance No. 01–22, together with interest thereon at the rate provided by law and his costs of this action.

THE COURT FURTHER ADJUDGES AND DECLARES

that Sections 53–3 and 53–1 of the City of Lake Geneva's Ordinance No. 01–22 are unconstitutional.

IT IS FURTHER ORDERED AND ADJUDGED

that this action is dismissed upon its merits and with prejudice.